IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CORDALE DIJON EASON, #157152**　　　　　　　　　　　　　　　　**PLAINTIFF**

**VERSUS**　　　　　　　　　　　　　　　　**CIVIL ACTION NO. 1:12cv241-JMR**

**OFFICER JEFFREY FRYE #280 (K-9) and**
**MELVIN BRISOLARA**　　　　　　　　　　　　　　　　**DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court on the motion of the Defendants, Melvin Brisolara [Brisolara] and Officer Jeffrey Frye #280 (K-9) [Frye] for summary judgment [43] filed in this case. The Court, being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds as follows.

## STATEMENT OF THE CASE

Plaintiff filed this *pro se* § 1983 action against Brisolara and Frye alleging that he suffered violations of his constitutional rights while held as a pretrial detainee at the Harrison County Adult Detention Center [HCADC]. [1, p. 4.] Specifically, Eason contends that Frye used excessive force against him on June 9, 2012, while responding to a fight between Eason and another inmate, Kelton Haralson [Haralson]. (*Id*.) In addition, Eason contends that he did not receive immediate medical attention after the incident. (*Id*.) He also claims that although he was treated for the dog bite a few minutes after the bite happened, the wound continued to bother him and he did not receive further medical treatment for six days. [8, p. 2.] Eason claims he received no warning that the dog would be released and asserts that the officers present on the day of the fight could have stepped in and separated he and Haralson to keep them from fighting, rather than unleashing the dog. [8, p. 3.] He advances claims under the Eighth and Fourteenth Amendments, stated that Frye was not properly trained. [8, p. 1.]

Eason was arrested for a parole violation and was waiting for his preliminary hearing. [43-1, p. 2.] Eason was housed in Housing Block B, B Section, in cell 212 on the date of the incident in question. [43-2.] Eason and three other inmates verbally threatened Deputy Michael Rosenzweig, which resulted in the relocation of these inmates to the disciplinary section of Block B, D Section (hereinafter "BD".) [43-14.] Eason was placed in a cell with inmate Kelton Haralson. [43-7.]

Frye was assisting on BD when he heard someone say "fight." [43-3, p. 1.] Frye responded with his K-9 to the second tier of BD and saw Eason and Haralson fighting. [43-3, p. 2.] Frye averred that he ordered the inmates to stop fighting or Frye would release the K-9. (*Id.*) Haralson stopped fighting when ordered to stop, but Eason continued to hit at Haralson. (*Id.*) Frye released his K-9, because Frye refused to comply with the order to stop fighting, and because of the presence of a threat to both Frye and Haralson's safety. (*Id.*) According to Frye, the dog was guided to Eason's buttocks area, and Eason dropped to the floor as soon as he was bitten. (*Id.*) Eason stated he had been told at least two times to stop fighting before the dog was released. [43-1, p. 5.]

According to the medical records, Eason first received treatment for the dog bite wound on June 9, 2012. [43-15, pp. 3-4.] The wound was cleaned and covered. (*Id.*) Eason was also treated for a dog bite on June 21 and 26, 2012. [43-15, pp. 1-2.]

## **STANDARD OF REVIEW:**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.  FED. R. CIV. P. 56(c). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 548. In considering a motion for summary judgment, the court views the evidence in the light most favorable to the party resisting the motion. *Beard v. Banks*, 547 U.S. 521, 529-30 (2006).

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. *See Harrington v. Harris,* 118 F.3d 359, 365 (5th Cir. 1997), *cert. denied* 522 U.S. 1016. A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

## ANALYSIS

The Court notes that as an alleged probation violator, Plaintiff was a pretrial detainee during his incarceration at the HCADC. *See Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996). Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment, rather than by the Cruel and Unusual Punishment Clause of the Eighth Amendment. *Morrow v. Harwell,* 768 F.2d 619, 625-6 (5th Cir. 1985). The proper inquiry for determining whether the constitutional rights of a pretrial detainee have been violated "is whether conditions accompanying pretrial detention are imposed upon detainees for the purpose of punishment, as the due process clause does not permit punishment prior to an adjudication of guilt." *Cupit v. Jones,* 835 F.2d 82, 85 (5th Cir. 1987); *see also Colle v. Brazos Cnty., TX,* 981 F.2d 237, 244 (5th Cir. 1994) (noting pretrial detainee's right to be free of punishment). If an adverse condition

is not reasonably related to a legitimate governmental goal, that is, if it is arbitrary or purposeless, a court may infer that it is punitive. *Grabowski v. Jackson Cnty. Public Defenders Office,* 47 F.3d 1386, 1396 (5th Cir. 1995). In his Complaint, Plaintiff contends that he was subjected to unconstitutional conditions because he was allegedly denied adequate medical treatment, and subjected to excessive force by Frye with the dog attack. [1, p. 4.]

The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-2 (1977) (emphasis added).

The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton*, 74 F.3d at 103. "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal - if it is arbitrary or purposeless" *Bell v. Wolfish*, 441 U.S. 520, 539 (1979). "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir. 1996); *Hudson v. McMillian*, 503 U.S. 1, 8 (2012).

"Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.' "

*Shepherd v. Dallas Cnty.,* 591 F.3d 445, 452 (5th Cir. 2009) (citing *Hare,* 74 F.3d at 644–5). "In an 'episodic act or omission' case, an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997).

I.     Claims Against Brisolara as Supervisor

Plaintiff asserts that the Defendants are liable in both their individual and official capacities for this alleged incident. [1.] Eason does not allege that Brisolara was personally involved in the incident at issue. "Supervisory officers cannot be held liable under Section 1983 for the actions of subordinates on any theory of vicarious liability." *Hampton v. Oktibbeha Cnty. Sheriff Dept.*, 480 F.3d 358, 367 (5th Cir. 2007) (quoting *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985)). Counties are liable for the constitutional violations committed by its employees such as Brisolara only when those violations result directly from a municipal custom or policy. *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000). Brisolara cannot be held liable for a claim under § 1983 based on the conduct of his subordinates. *See Rios v. City of Del Rio,* 444 F.3d 417, 425 (5th Cir. 2006), *cert. denied* 549 U.S. 825. A plaintiff must show either that the sheriff was personally involved in the constitutional violation or that there is a sufficient causal connection between the sheriff's conduct and the alleged constitutional violation. *Id.* The evidence in this case is that Brisolara was not personally involved in the incident involving the dog bite.

Eason also argues that Brisolara failed to supervise his employees, yet Eason provided no

evidence in support of such a claim. *See Thompson v. Upshur Cnty.,* 245 F.3d 447, 459 (5th Cir. 2001) (explaining that supervisory liability under § 1983 requires proof that the supervisor failed to supervise the officer involved; that there is a causal connection between the alleged failure to supervise and the constitutional violation; and that the failure to supervise constituted deliberate indifference to the plaintiff's constitutional rights). The Court concludes that any claims brought against Brisolara as supervisor of Frye should be dismissed.

II.    Official Capacity Claims

Eason brings claims against these defendants in their individual and official capacities, looking for expungement of his criminal record, and monetary damages for his physical and psychological injuries. (*Id.*) An official capacity claim against these Defendants is, ultimately, a claim against Harrison County. In order to maintain his official capacity claims, Eason must establish a constitutional violation, and must satisfy the three requirements necessary to impose municipal liability:  that there was an official policy, practice or custom which would subject Harrison County to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the HCADC's deliberate indifference to that injury. *See Lawson v. Dallas Cnty.*, 286 F.3d 257, 263 (5th Cir. 2002).

III.   Excessive Force

Plaintiff contends that he was subjected to unconstitutional conditions because he was allegedly subjected to excessive force by Frye with the dog attack. [1.] "Where a plaintiff's excessive force claim, whether he is a prisoner, arrestee, detainee, or an innocent bystander . . . falls outside the specific protections of the Bill of Rights, that plaintiff may still seek redress under the due process clause of the Fourteenth Amendment. *Petta v. Rivera*, 143 F.3d 895, 911

6

(5th Cir. 1998). The court must determine whether the defendants' actions caused any injury, and "were grossly disproportionate to the need for action under the circumstances and were inspired by malice rather than merely careless or unwise excess of zeal so that they amounted to an abuse of official power that shocks the conscience." *Petta*, 143 F.3d at 902. Under the Eighth Amendment, the appropriate inquiry is "whether the force was applied in a good faith effort to maintain or restore disciple or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6.

To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). A plaintiff asserting an excessive force claim must have suffered at least some form of injury, resulting from the use of clearly excessive force and that the use of force was unreasonable. The extent of the injury may be considered in determining if the force used was malicious, wanton or unnecessary. *Hudson*, 503 U.S. at 7.

Prison officials are afforded "wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547; *Baldwin v. Stalder,* 137 F.3d 836, 840 (5th Cir. 1998). In this case, Eason caused a disturbance by threatening an officer and engaged in a fist fight with a fellow inmate. Eason refused to stop fighting when Officer Frye ordered him to stop. This caused an obvious threat to security and in response, Frye applied the amount of force necessary to restore order on the tier. Eason suffered a minor injury when he was bitten by the dog. The Sheriff's Department Policy and Procedure regarding canine

operations requires the canine handler to command the dog to use no more force than necessary to enforce the law, to protect the handler or anyone else from the threat of serious injury. [43-5, p. 18.] Frye did not see another officer in the vicinity of the fight to stop the fight or prevent injury. [43-3, p. 2.] As soon as Eason went to the ground and stopped fighting, Frye ordered the dog to release its grip on Eason, then exited the cell. (*Id.*)

The Court finds that Eason's claim of excessive force does not show the magnitude or aberrant nature necessary to meet the constitutional standard. *See Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). The Court concludes that the defendants' motion for summary judgment on Eason's claim of excessive force should be granted.

IV.     Denial of Adequate Medical Treatment

Eason claims it took a week to receive any medical care for his wounds after the dog bite incident on June 9, 2012. [1, p. 4.] When questioned during his deposition concerning his claim of denial of medical care, Eason said "they just missed it" and nothing more about the medical care. [43-1, p. 58 ] He also acknowledged that he was seen by a nurse immediately following the incident, and then three days after the accident on June 12, 2012. [43-1, p. 51.] He stated that the nurse found no drainage, redness, edema, or pain and found the wound scabbed over and healed. [43-1, pp. 51-2.]

When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001). In order to prove deliberate indifference to serious medical needs, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate

health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-5 (5th Cir. 1999). Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). The law is clear that claims concerning unsuccessful medical treatment, mere negligence, neglect, or medical malpractice do not give rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). None of these circumstances occurred in this case.

The Court, therefore, concludes that Eason has failed to meet his burden of establishing that the Defendants were deliberately indifferent to his serious medical needs. The Court finds that Eason's claims of deliberate indifference to his medical needs should be dismissed.

V.     Failure to Train and/or Supervise Claim

Eason contends that the officers and supervisors are not properly trained. [8, p. 1.] He contends that his grievances were not answered. [1, pp. 1-2.] He claims that a K-9 should only be used "for group purposes" establishing that in his case procedure was not followed. [8, p. 4.]

Frye's training records, the training record for the K-9 which Frye was in charge of handling, jail policies and procedures, and Brisolara's affidavit regarding the level of training and policies at HCADC were submitted by the Defendants. [43-8, 43-9, 43-11 through 43-13.] Brisolara is the final policy maker for HCADC. [43-9, p. 1.] To the extent Eason brings this

action against Brisolara, in his official capacity, he must establish a constitutional violation, and in addition must satisfy the requirements necessary to impose municipal liability.

A municipality's failure to properly train or supervise its employees can be a policy or custom giving rise to § 1983 liability. *See City of Canton v. Harris,* 489 U.S. 387, 387 (1988). Eason must prove that: (1) the training procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy, and (3) the inadequate training policy directly caused the constitutional deprivation. *See Mesa v. Prejean,* 543 F.3d 264, 274 (5th Cir. 2008). Finally, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dept*., 130 F.3d 162, 167 (5th Cir. 1997).

Ordinarily, to impose liability for failure to train, "the [plaintiff's] focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). In particular, there must be specific allegations as to how a particular training program is defective. *Id*. Eason alleges that the Defendants failed to provide adequate and competent training and/or supervision to the officer. [8, p. 1.] Eason must offer proof that the alleged constitutional violation occurred because Brisolara failed to train or supervise his employees, and that the inadequate training was the result of an official custom or policy of the HCADC. Eason has not specifically alleged that there existed a custom of HCADC to inadequately train employees. Eason provides no evidence that any defendant failed to train or supervise any deputy or that the alleged inadequate training was the result of an official policy or custom.

While there is evidence that Eason was injured in the incident at issue, he makes no specific allegations regarding how the training and supervision program at the HCADC was inadequate or defective. He presents no evidence to contradict the Defendants' assertions that the training and supervision at the HCADC was adequate. He contends that his numerous complaints and grievances went unanswered but provides no evidence of inadequate training or supervision.

In addition to proving that Brisolara inadequately trained and supervised the HCADC employees, Eason must prove that the inadequate training resulted directly from a municipal custom or policy. *See Conner*, 209 F.3d at 796. Eason makes no allegation of an official HCADC policy that caused the allegedly inadequate training and supervision of the facility's employees. The Court finds that Eason's assertions regarding inadequate training and supervision, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. The Court concludes that the motion for summary judgment on Eason's failure to train claim should be granted.

VI.     Qualified Immunity

The Defendants have raised the defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 231 (1991). Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998). In order to overcome the bar of qualified immunity, Plaintiff must allege that the Defendants' conduct was objectively unreasonable in response to the incident in the cell block.

The Court finds that Plaintiff has failed to create a genuine issue as to whether any

defendant acted unreasonably. To impose liability for failure to train, "the [plaintiff's] focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts*, 397 F.3d at 293. Eason must make specific allegations regarding how a particular training program is defective. *Id*. Eason does not set forth specific allegations about how Brisolara was unreasonable in his training and supervising methods. Eason's only specific allegation against Brisolara is that he is sued because he is Frye's superior officer and Eason wants to hold Brisolara responsible for Frye's actions. [43-1, p. 9.] Eason has failed to offer any probative evidence that Brisolara failed to reasonably train and supervise any employee of the HCADC. Consequently, the Court finds that Plaintiff has failed to establish any unreasonable conduct on behalf of Brisolara.

Eason has also failed to meet the applicable standard to over come the qualified immunity defense, as explained above. The Court, therefore, concludes that the Defendants are entitled to qualified immunity on any claims brought against them in their individual capacities. In addition, Brisolara is entitled to the defense of qualified immunity because he is a law enforcement official. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986), *cert. denied* 483 U.S. 1021 (1987).

VII. <u>Emotional Damages</u>

The Defendants argue that in order for Eason to be entitled to any emotional or mental injuries, he must show the existence of a physical injury. The Prison Litigation Reform Act requires that a physical injury, suffered while in custody, must be shown in order for a prisoner to commence a federal civil action for mental or emotional injuries. 42 U.S.C. §1997e(e). If a plaintiff fails to show a physical injury, §1997e(e) bars recovery for mental and emotional

damages. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). In determining whether a prisoner has sustained a necessary physical injury to support a claim for mental or emotional suffering, the "injury must be more than *de minimis*, but need not be significant." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *see Calhoun v. Hargrove*, 71 Fed.Appx. 371 (5th Cir. 2003) (prisoner's claim that he was forced to work beyond his medical restrictions, thereby causing him to have dangerously elevated blood pressure readings was not a physical injury for PLRA purposes); *Alexander v. Tippah Cnty. Miss.*, 351 F.3d 626, 630-1 (5th Cir. 2003), *cert. denied*, 541 U.S. 1012 (2004) (nausea and vomiting caused by raw sewage on floor of jail cell was *de minimus*); *Myers v. Valdez*, 2005 WL 3147869 (N.D. Tex.) (pain, numbness in extremities, loss of mobility, lack of sleep, extreme tension in neck and back, and an extreme rash and discomfort were insufficient to establish a physical injury under the PLRA). Although the dog bite may have been treated by the nurse, the Court finds that such an injury does not meet the standard necessary to support a claim for mental or emotional suffering. *Harper*, 174 F.3d at 719. The Court further concludes that Eason's claim for emotional or mental damages is barred under 42 U.S.C. §1997e(e).

VIII.    Plaintiff's State Law Claims

It is undisputed that Plaintiff was a detainee at the HCADC when the alleged incidents occurred. The Defendants argue that the Mississippi Tort Claims Act prohibits any state law claim by a detainee against a governmental entity and its employees acting within the course and scope of their employment. *See Harvison v. Greene Cnty. Sheriff Dep't*, 899 So.2d 922 (Miss. App. 2005); MISS. CODE ANN. § 11-46-9(1)(m). Eason makes no argument in opposition.

The Court finds that Eason's claims under state law are barred by provisions contained in

the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1, *et seq*. Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-9(1)(m). The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred, defendants are entitled to summary judgment in regard to Plaintiff's state law claims, if any, arising as a result of the allegations in the complaint, because those state law claims are barred by the above provision.

## CONCLUSION

For the reasons set forth above, this Court finds that the Defendants' motion for summary judgment [43] on the claims advanced by Eason under § 1983 should be granted. The Court further finds that the motion for qualified immunity by the Defendants for any claims brought against them in his individual capacity should be granted. A separate judgment in conformity with and incorporating by reference the above Memorandum Opinion shall issue this date. A copy of this Memorandum Opinion and the judgment shall be mailed to Eason at his last known address of record by certified mail, return receipt requested. Each party shall bear their respective costs associated with this motion.

DATED, this the 18th day of September, 2013.

s/ John M. Roper, Sr.
CHIEF UNITED STATES MAGISTRATE JUDGE